STAUFFER ESHLEMAN & CO., LTD., ET AL. v. UNITED STATES

No. 5597.—Invoices dated Hamburg, Germany, September 23, 1932, and June 28, 1933.
Entered at New Orleans, La., October 27, 1932, and July 29, 1933.
Entry Nos. 815 and 221.

(Decided March 12, 1942)

*Philip Stein* for the plaintiffs.
*Paul P. Rao*, Assistant Attorney General (*Richard E. FitzGibbon* and *Dorothy C. Bennett*, special attorneys), for the defendant.

DALLINGER, Judge: The appeals to reappraisement listed in annexed schedule marked A, and made a part hereof, involve the question of the dutiable value of two importations of hexagonal poultry netting in 50-yard rolls, galvanized before weaving, exported from Germany and entered at the port of New Orleans in October, 1932, and July, 1933, respectively. The merchandise in reappraisement 110602–A was entered at the invoice unit prices per roll expressed in English pounds sterling, less 88 per centum discount, less inland and ocean freight, insurance, and consular fee.

The merchandise in reappraisement 110604–A was entered at the invoice unit prices per roll expressed in English pounds sterling, less 86⅝ per centum discount, and less inland and ocean freight, insurance, and consular fee.

The merchandise was appraised both under the Tariff Act of 1930 and the Antidumping Act of 1921, the Secretary of the Treasury having made a finding of dumping under date of January 11, 1934, promulgated in T. D. 46826, 65 Treas. Dec. 56, which reads as follows:

TREASURY DEPARTMENT, *January 11, 1934.*

*To Collectors of Customs and Others Concerned:*

After due investigation in accordance with the provisions of section 201 of the Antidumping Act, 1921, I find that the industry of manufacturing woven-wire fencing and netting in the United States is being and is likely to be injured by reason of the importation in the United States of woven-wire fencing and netting from Germany and that such woven-wire fencing and netting are being sold and are likely to be sold in the United States at less than their fair value.

(81½)

HENRY MORGENTHAU, JR.,
*Secretary of the Treasury.*

For the purpose of assessing regular duties under the Tariff Act of 1930, the merchandise was appraised on the basis of foreign value in unit prices per roll expressed in reichsmarks, less 10 per centum for length, less 10 per centum for galvanizing before weaving, less discounts of 37½ per centum and 2½ per centum.

Regarding the application of the antidumping act, the appraiser made additional red-ink returns of the foreign-market values and the purchase prices of the merchandise, the difference between these two figures representing the dumping duties that will be assessable on liquidation.

At the hearing held at New York, on January 23, 1940, counsel for the plaintiffs moved that the appraisements herein be declared null and void on the ground that there was no designation of packages for examination made by the collector as required by section 499 of the Tariff Act of 1930. The trial judge reserved decision on the motion and it is now before me for action.

An examination of the summary sheets included in the official papers in said appeals discloses the fact that in both cases, under the heading "Packages to be examined" the collector simply wrote the word "wharf" without designating any particular number of packages or directing that all the packages be examined by the appraiser.

Section 499 of the Tariff Act of 1930 reads:

SEC. 499. EXAMINATION OF MERCHANDISE.

Imported merchandise, required by law or regulations made in pursuance thereof to be inspected, examined, or appraised, shall not be delivered from customs custody, except as otherwise provided in this Act, until it has been inspected, examined, or appraised and is reported by the appraiser to have been truly and correctly invoiced and found to comply with the requirements of the laws of the United States. *The collector shall designate the packages or quantities covered by any invoice or entry which are to be opened and examined for the purpose of appraisement or otherwise and shall order such packages or quantities to be sent to the public stores*

*or other places for such purpose.* Not less than one package of every invoice and not less than one package of every ten packages of merchandise, shall be so designated unless the Secretary of the Treasury, from the character and description of the merchandise, is of the opinion that the examination of a less proportion of packages will amply protect the revenue and by special regulation permit a less number of packages to be examined. The collector or the appraiser may require such additional packages or quantities as either of them may deem necessary. If any package is found by the appraiser to contain any article not specified in the invoice and he reports to the collector that in his opinion such article was omitted from the invoice with fraudulent intent on the part of the seller, shipper, owner, or agent, the contents of the entire package in which such article is found shall be liable to seizure, but if the appraiser reports that no such fraudulent intent is apparent then the value of said article shall be added to the entry and the duties thereon paid accordingly. If a deficiency is found in quantity, weight, or measure in the examination of any package, report thereof shall be made to the collector, who shall make allowance therefor in the liquidation of duties. [Italics ours.]

Counsel for the Government in the brief filed herein states as follows:

The official papers herein establish, *prima facie*, that there was 100% designation and examination of each of these shipments on the wharf at the time of entry, and that, under the ruling of the Court of Customs and Patent Appeals in the case of *United States* v. *Young*, 27 C. C. P. A. *124*, C. A. D. 73, the appraisements are valid.

I have carefully examined the cited case and fail to see how it applies to the present facts. The only possible reference made by the appellate court to the question involved herein is the following:

As to the merchandise imported at the port of Los Angeles, covered by reappraisements 112873-A and 112877-A, it was contended by counsel for the Government before the courts below, and it is contended here, that, although the collector at that port designated only a few packages of the merchandise to be sent to the public stores for examination, he required that all of the remaining packages be examined on the "dock"; that as the collector has authority, under and by virtue of the provisions of section 499, *supra*, to order merchandise "sent to the public stores or other places" to be examined for appraisement purposes, and as it will be presumed, there being no evidence to the contrary, that all of the merchandise was examined for appraisement purposes as directed by the collector, the appraisements by the local appraiser at the port of Los Angeles were valid.

In that case the collector did designate certain packages to be examined in the public stores and the remaining cases to be examined at the dock. In the instant case the collector made no designation at all. He simply designated the place where the merchandise should be examined, to wit, on the "wharf," but he failed to designate the packages or quantities which were to be opened and examined by the appraiser, as provided for in section 499 of the Tariff Act of 1930.

The provision in said section 499 was manifestly designed to protect the revenues of the Government by insuring a sufficient minimum examination of imported merchandise, and the United States Court

of Customs and Patent Appeals has repeatedly held that this provision in said section 499 is mandatory. *United States* v. *V. W. Davis*, 20 C. C. P. A. 305, T. D. 46087; *United States* v. *F. W. Woolworth Co.*, 22 C. C. P. A. 184, T. D. 47126; *United States* v. *G. W. Beermaker*, 23 C. C. P. A. 48, T. D. 47714; *United States* v. *Boston Paper Board Co.*, 23 C. C. P. A. 372, T. D. 48233.

In the very recent case of *Vulcan Match Co.* v. *United States*, Reap. Dec. 5388, decided by Keefe, Judge, on August 15, 1941, in a precisely similar case, where the collector at the port of New York under the heading "Packages to be Examined" on the summary sheet wrote "Whf.," apparently indicating that the merchandise in that case should be examined at the wharf, the United States examiner of the involved merchandise testified that such had been the long-continued practice in importations of similar merchandise, to wit, safety matches. In his decision the learned judge said:

From an examination of the official papers and a consideration of the evidence we find that the precise issues here presented were before the Third Division of this court in the case of *United States* v. *John A. Conkey Co. (Vulcan Match Co.)*, Reap. Dec. 5235, wherein it was held that the designation of the collector similar to the reappraisements herein was illegal; * * * . It was further held that a long-continued practice of the customs officials in the selection of samples from importations of matches from less than 1 in 10 packages upon each invoice, in the absence of special regulations, does not legalize such unlawful practice.

I therefore hold, on the basis of the record before me in this case, and following the decision heretofore cited and the authorities relied upon therein, that the appraisements of the merchandise, covered by the appeals listed in schedule A hereto attached, are null and void *ab initio*. Judgment will be rendered accordingly.

Upon the facts herein established, and the law applicable thereto, I hold that, inasmuch as the collector has failed to comply with the mandatory provision of said section 499, the appraisements covered by the appeals involved herein must be and hereby are declared to be null and void *ab initio*.

Judgment will be rendered accordingly.